FILED
2023 Aug-25  PM 03:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

|  |  |  |
|---|---|---|
| **CHANTELE FOSTER and** | ) | |
| **JEREMY FOSTER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **6:22-cv-1275-ACA** |
| **KEVIN EMBERG,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM BRIEF IN SUPPORT OF RENEWED MOTION FOR PARITAL DISMISSAL OF PLAINTIFFS' SECOND AMENDED COMPLAINT

COMES NOW Defendant Kevin Emberg, and submits this Memorandum Brief in support of Defendant's Renewed Motion for Partial Dismissal of Plaintiffs' Second Amended Complaint.

CONSTANCE CALDWELL WALKER
(ASB-5510-L66C)
Attorney for Defendant Kevin Emberg

**OF COUNSEL:**

**WEBB MCNEILL WALKER PC**
One Commerce Street, Suite 700 (36104)
Post Office Box 238
Montgomery, Alabama 36101
(334) 262-1850 – T
(334) 262-1889 – F
cwalker@wmwfirm.com

# TABLE OF CONTENTS

PROCEDURAL HISTORY ................................................................2

FACTS .........................................................................................4

STANDARD OF REVIEW ............................................................16

ARGUMENT ..............................................................................19

  I.  First Amendment Retaliation.............................................19

  **A.   Plaintiff Chantele Foster** .........................................19

  **B.   Plaintiff Jeremy Foster** ...........................................26

  II.   Plaintiffs have failed to demonstrate that Deputy Emberg violated Clearly Established Constitutional Law. ...........................................26

  III.   State-Law Claims.........................................................28

      A.   Deputy Emberg is entitled to State Immunity. .................28

      B.   Plaintiffs have failed to state plausible state-law claims for Malicious Prosecution. ...........................................32

      C.   Plaintiffs have failed to state plausible state-law claims for Abuse of Process.............................................37

CONCLUSION ...........................................................................39

CERTIFICATE OF SERVICE.......................................................40

# PROCEDURAL HISTORY

This case was initially filed by the Plaintiffs Jeremy Foster and Chantele Foster in the Circuit Court of Walker County, Alabama, on September 12, 2022. (Doc. # 2) The case was removed to the United States District Court for the Northern District of Alabama, Jasper Division, on October 3, 2022. (Doc. # 1) Defendant Deputy Kevin Emberg filed a Motion to Dismiss the federal claims in Count Two of the Complaint (except for the retaliatory arrest claim of Plaintiff Jeremy Foster), and all of the state-law claims in the remaining counts of the Complaint. (Doc. # 3)

Plaintiffs filed their First Amended Complaint on October 26, 2022. (Doc. # 7) Deputy Emberg filed a Motion to Dismiss all of the federal claims in Count Two (with the exception of the retaliatory arrest claim of Plaintiff Jeremy Foster) and all of the state law claims in the remaining counts on November 9, 2022. (Doc. # 9)

On January 9, 2023, Plaintiffs sought leave from the Court to file a Second Amended Complaint. (Doc. # 17) Leave was granted to the Plaintiffs by way of Court order dated January 10, 2023. (Doc. # 18) The Second Amended Complaint was filed by the Plaintiffs that same day. (Doc. # 19)

By way of Court order dated January 11, 2023, the Court granted Deputy Emberg the right to file a notice renewing his Motion to Dismiss based on the indication from the parties that the newly-filed Second Amended Complaint added only a few new facts and they did not change the nature of Defendant's arguments seeking dismissal. (Doc. # 20) Deputy Emberg filed a Notice to Renew his Motion to Dismiss on January 12, 2023. (Doc. # 21) Plaintiffs also filed a Motion to Renew their brief in opposition to the Motion to Dismiss. (Doc. # 24)

On January 16, 2023, Deputy Emberg sought leave to file supplemental legal authority in support of his Motion to Dismiss. (Doc. # 24) Plaintiffs also sought leave to file supplemental authorities in response. (Doc. # 26) These motions were granted by the Court. (Doc. ## 25, 27)

3

On July 27, 2023, the Court conducted a conference call with the parties in this case. The Court advised the parties that it had requested that the Alabama Supreme Court answer a certified question from the Court in the case of *King v. Moon,* 2:21-cv-01568-ACA regarding the defense of State Immunity. The answer to this question is also relevant to Defendant Emberg's Motion to Dismiss filed in this case.

On July 27, 2023, the Court entered a text order denying, without prejudice, Deputy Emberg's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. # 29) The Court also stayed this case pending resolution of the certified question to the Alabama Supreme Court in *King v. Moon.* (Doc. # 29) On August 7, 2023, the Alabama Supreme Court declined to answer the certified question in *King v. Moon.*

Defendant believes that renewal of the Motion to Dismiss the Second Amended Complaint is appropriate at this time. This is because the Alabama Supreme Court has declined to answer the certified question on State Immunity in *King v. Moon*, which was the sole reason the case was stayed by this Court.

### FACTS

1.      Plaintiffs Chantele Foster and Jeremy Foster were a married couple residing together in rural Walter County, with Ms. Foster's two minor sons from a previous marriage. (Doc. # 19, p. 3, no. 9)

2.     On or about October 14, 2020, Plaintiffs were on the way out to dinner when they got into an argument, canceled their dinner plans, and came back home. (Doc. # 19, p. 3, no. 12)

3.     Their argument continued in the living room when they returned home. (Doc. # 19, p. 4, no. 13)

4.     Jeremy Foster went into the bedroom, laid down on the bed and was inspecting a service weapon issued to him as a probation officer. (Doc. # 19, p. 4 no. 14)

5.     Chantele Foster followed her husband into the bedroom and told him that his gun did not scare her. (Doc. # 19, p. 4, no. 14)

6.     This comment was overheard by Mrs. Foster's 9-year-old son who promptly called 911. (Doc. # 19, p. 4, no. 15)

7.     Chantele Foster decided she was going to take her kids and spend the night with her parents to let matters with her husband settle down. (Doc. # 19, p. 4, no. 16)

8.     She walked into her 9-year-old son's room and found him on the phone with the 911 operator. (Doc. # 19, p. 4, no. 17)

9.     She took the phone from her son, and told the dispatcher that everything was fine, no one was needed, and attempted to cancel the call. (Doc. # 19, p. 4, no. 17)

10.    As Mrs. Foster and her children proceeded to leave the home, to go to Mrs. Foster's parents' house, four sheriff's patrol vehicles pulled into her driveway blocking her car from leaving the premises. (Doc. # 19, p. 4, no. 18)

11.    Chantele Foster exited her vehicle, told the deputies nothing was wrong, and asked them to leave. (Doc. # 19, p. 4, no. 19)

12.    Defendant Kevin Emberg, senior deputy on scene, told Chantele Foster that they were not leaving because there had been a domestic call involving a weapon. (Doc. # 19, p. 4, no. 19)

13.    Defendant Emberg entered the house and spoke to Jeremy Foster who explained that he and his wife had been arguing but nothing further had happened, and they did not need the deputies' assistance. (Doc. # 19, p. 5 no. 20)

14.    Deputy Emberg appeared agitated and said he could take them both to jail, but since he believed Chantele Foster was the aggressor, she had to leave the house and if he had to come back or if he caught her there again, she was going to jail. (Doc. # 19, p. 5, no. 21)

15.    Deputy Emberg then sent a junior deputy with Chantele Foster into the home so she could collect her clothes, and while inside the home, this deputy turned off his body camera and apologized for the way Deputy Emberg was acting. (Doc. # 19, p. 5, no. 22)

16.    Deputy Emberg did not make a report of the incident and directed Mrs. Foster and her children to leave the premises. (Doc. # 19, p. 5, no. 23)

17.    The next day Chantele and Jeremy Foster decided to separate and agreed that Chantele Foster and her sons would return to the house and Jeremy Foster would move out. (Doc. # 19, p. 5, no. 24)

18.    Afraid that Deputy Emberg might come back and arrest her for no reason, Chantele Foster contacted a friend at the city police department, and he told her that Deputy Emberg should have made a report of the incident and it appeared to him that Deputy Emberg was trying to take advantage of the situation by bullying Chantele Foster into leaving. (Doc. # 19, pp. 5-6, no. 25)

19.    Chantele Foster contacted Captain Shane Taylor, the commanding officer for Deputy Emberg, and left a message stating that Deputy Emberg had failed to make an incident report. (Doc. # 19, p. 6, no. 26)

20.    Captain Taylor's secretary called her back and said that they would send a deputy out to make a report of the incident. (Doc. # 19, p. 6, no. 27)

21.    At some point Mr. and Mrs. Foster began speaking again and she told him about her conversation with her friend at the city police department. (Doc. # 19, p. 6, no. 28)

22.    The Fosters decided that Mrs. Foster would file a written complaint about Deputy Emberg with the Sheriff, Nick Smith, and that Mr. Foster would help

7

her by finding out the regulations Deputy Emberg had allegedly violated. (Doc. # 19, p. 6, no. 29)

23.    On or about October 16, 2020, Deputy Legg (who had been present at the house on the initial call on October 14) reported to the home to make a report. (Doc. # 19, p. 7, no. 30)

24.    Chantele Foster told Deputy Legg that she and her husband were separated and that she was living in the house. (Doc. # 19, p. 7, no. 31)

25.    Deputy Legg told Chantele Foster that if her husband came back and they had any problems, to give him a call and he would come out and "deescalate things." (Doc. # 19, p. 7, no. 31)

26.    Later that evening, Jeremy Foster returned to the house to retrieve some personal belongings that Chantele Foster had packed up for him earlier that day. (Doc. # 19, p. 7, no. 32)

27.    When he arrived, Jeremy Foster wanted to talk to his wife and work things out, but she was unable to stay and had to leave the home in order to take some things to her sons who were staying with her parents. (Id.)

28.    When Chantele Foster returned to the home, accompanied by her parents, she saw Jeremy Foster behind the house hitching-up their newly-purchased zero-turn lawnmower to cart it away. (Id.)

29.   Chantele Foster did not approve of Jeremy Foster taking the lawnmower, so she called 911 to dispatch Deputy Legg to the scene. (Doc. # 19, p. 7, no. 33)

30.   Her mother accompanied her into the house while her father stayed outside with Jeremy Foster. (Id.)

31.   Chantele Foster asked the 911 operator if Deputy Emberg was being dispatched and was told that he was. (Doc. # 19, p. 7, no. 34)

32.   Chantele Foster told the operator that Deputy Emberg was not allowed on her property and hung up the phone. (Id.)

33.   The 911 operator called back, and Chantele Foster told the operator to disregard the call because she did not want Deputy Emberg there for any reason. (Id.)

34.   After hanging up the phone, Deputy Emberg and Deputy Legg arrived at the Fosters' home. (Doc. #19, p. 8, no. 35)

35.   Deputy Emberg walked past Jeremy Foster who was loading up a trailer with the lawnmower, and entered the house to speak with Chantele Foster, while Deputy Legg waited outside with Jeremy Foster. (Id.)

36.   Deputy Emberg heard Chantele Foster tell her mother that Jeremy Foster wanted to talk and work things out, but she did not want to, and that she guessed that made her a bitch. (Doc. 19, p. 8, no. 36)

37.     Deputy Emberg also heard Chantele Foster tell her mother that Jeremy Foster was "talking" things from the house that he did not pay for and he needed to go "powder his vagina" because he was acting like a "gold-digging female." (Id.)

38.     Jeremy Foster was still outside and not in a position to hear this conversation. (Id.)

39.     Deputy Emberg stated that Chantele Foster should not have called "his guys" because it was a civil matter. (Doc. # 19, p. 8, no. 37)

40.     Chantele Foster replied that she was following "your guy's" instructions to call him. (Id.)

41.     Deputy Emberg stormed outside and criticized Deputy Legg for telling Chantele Foster to call him. (Doc. #19, p. 9, no. 38)

42.     Deputy Emberg then told Deputy Legg "I guess you are running the show now, so what is your plan to handle this situation." (Id.)

43.      Deputy Legg responded that he was going to tell Jeremy Foster to get his personal things and that he needed to unload his trailer, leave the lawnmower at the house, and leave and not come back that night. (Doc. # 19, p. 9, no. 39)

44.     Deputy Legg asked Deputy Emberg if he was "good" with that and Emberg said yes. (Id.)

45.     Jeremy Foster did not agree and told Deputy Emberg: "I don't know why y'all are doing her any favors Kevin. She's filing a complaint against you with

10

the Sheriff because she said you were bullying her the other night when you were out here." (Doc. # 19, p. 9, no. 40)

46.    Deputy Emberg replied: "oh really," and went back inside and immediately arrested Chantele Foster and placed her in handcuffs. (Doc. # 19, p. 9, no. 41)

47.    Deputy Legg was surprised so he asked Deputy Emberg what was going on and what he was doing because he did not hear what Jeremy Foster told Emberg. (Id.)

48.    Jeremy Foster told Deputy Emberg that he could not arrest Chantele Foster in retaliation for making a report against him. (Doc. # 19, p. 9, no. 42)

49.    Deputy Emberg instructed Deputy Legg to "hook [Jeremy Foster] up too." (Doc. # 19, p. 10, no. 43)

50.    Chantele Foster's mother asked Deputy Emberg why he was arresting Chantele Foster and he said it was for her own good. (Doc. # 19, p. 10, no. 44)

51.    Deputy Emberg separated Chantele Foster and Jeremy Foster. (Doc. # 19, p. 10, no. 45)

52.    Deputy Emberg transported Chantele Foster to the Walker County Jail. (Id.)

53.    Deputy Emberg told Chantele Foster that "she needed to divorce her husband and maybe now she would listen to him." (Id.)

54.    While at the jail, the senior investigator with the Walker County Sheriff's Office got into a screaming match with Deputy Emberg over wrongfully arresting the Fosters and told him he should not have done it. (Doc. # 19, p. 10, no. 46)

55.    Another deputy told the Fosters that Emberg was wrong for arresting them and he did not know what Emberg was thinking. (Doc. 19, p. 10, no. 47)

56.    Both Plaintiffs were in the booking area of the jail for the remainder of the evening, and then were released on a signature bond. (Doc. 19, p. 10, no. 48)

57.    On October 27, 2020, Deputy Emberg filed criminal charges against the Fosters for domestic violence/harassment. (Doc. # 19, p. 10, no. 49)

58.    Deputy Emberg contended that Chantele Foster had committed a crime because she stated to her husband that "he needed to powder his vagina." (Doc. # 19, p. 10, no. 50)

59.    Deputy Emberg contended that Jeremy Foster had committed a crime when he called his wife a "bitch." (Doc. # 19, p. 10, no. 51)

60.    At no point in time did Jeremy Foster actually call his wife a bitch, nor did Chantele Foster actually tell her husband he needed to powder his vagina; Deputy Emberg's allegation in the arrest report that they did was completely fabricated. (Doc. 19, p. 11, no. 52)

61.    Deputy Emberg knew that neither Plaintiff had committed a crime. (Doc. # 19, p. 11, no. 53)

62.    Deputy Emberg had allegedly applied for a job as a probation officer at the Jasper Office for the Alabama Bureau of Pardons and Paroles (where Jeremy Foster worked) and believed he would have a greater chance of being hired if Jeremy Foster was arrested or lost his job. (Id.)

63.    Deputy Emberg went out of his way to inform Jeremy Foster's coworkers and fellow deputies about the arrest of Jeremy Foster, hoping word would get back to Jeremy Foster's bosses. (Doc. # 19, p. 11, no. 54)

64.    Deputy Emberg spread rumors that Jeremy Foster had been fired from his job because of the arrest, which was untrue, and told the Fosters' neighbors they had been arrested. (Doc. # 19, p. 11, no. 55)

65.    News of the arrest traveled throughout the community and kept the Fosters under suspicion. (Doc. # 19, pp. 11-12, no. 56)

66.    Because of the charges on his record, Jeremy Foster was prevented from being promoted or receiving a raise for three years. (Id.)

67.    Chantele Foster was embarrassed and humiliated and it caused her to leave her job of 13 years as a paralegal at a local law office. (Id.)

68.    On November 24, 2020, the District Attorney's Office and the lawyer for the Fosters jointly asked the district court to dismiss the criminal charges against

the Fosters (who had separate cases) and the court granted the motions. (Doc. # 19, p. 12, no. 57; See Exhibits 1–4 attached hereto.)

69.    Each Joint Motion to Dismiss stated that neither of the Plaintiffs had signed complaints against each other; that they wanted the charges against the other dismissed; and that each Plaintiff (both of whom were both plaintiff and victim in the two cases) as well as the arresting officer, and the district attorney, had agreed that the cases should be dismissed. (Exhibits 1 and 2 hereto)

70.    According to the Second Amended Complaint, Deputy Emberg told the DA's Office that he was displeased with the DA's decision not to prosecute, and had words with the DA's office to that effect. (Doc. # 19, p. 12, no. 58)

71.    The Second Amended Complaint states that in response to Deputy Emberg's discontentment, the District Attorney's Office filed a motion asking the court to set aside the dismissal order to allow Deputy Emberg to address the court. (Doc. # 19, p. 12, no. 59) (This is contrary to the language of the motion, see no. 72 below.)

72.    Actually, the district attorney filed the same motion in each case, and each motion stated that the previously filed motion to dismiss did not accurately reflect the State's position, nor the procedural process that the State believed should have occurred. (See Exhibits 5-6 attached hereto.)

73.     The motions also stated that the court should hold a hearing on the motions to dismiss and require all parties to be present, which would allow the court to reach informed and intelligent decisions that "serve the best interest of justice and judicial economy." (See Exhibits 5-6 attached hereto.)

74.     The Second Amended Complaint states that on December 9, 2020, the court conducted a second hearing and entered a second order dismissing the charges against the Fosters in both cases. (Doc. # 19, p. 12, no. 60)

75.     The order of the court, entered in each case, found that the cases should be dismissed "with the following factors considered:"

1.  That before this Court is a matter involving cross-complaints for Domestic Violence-Harassment, pursuant to Alabama Code § 13A-6-132.

2.  That on October 16, 2020, Jeremy Foster and his wife Chantele Foster were both arrested for the above said offense, which is a Class A misdemeanor.

3.  That neither party filed formal charges against the other and both were arrested by the responding law enforcement officer who arrived on scene to investigate a domestic disturbance.

4.  That Jeremy Foster appears before this Court as a defendant and a crime victim. Likewise Chantele Foster appears as both a defendant and crime victim.

5.  That the alleged facts giving rise to these charges appears to have occurred at the same time or during the same event.

6. That furthermore, the Court having heard testimony from the parties finds neither party sustained injuries; that neither party wants to pursue prosecution; and that the parties are continuing to live together with no intent to separate or file for divorce.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the above-style cause is hereby dismissed costs remitted.

(See Exhibits 7-8.)

## STANDARD OF REVIEW

When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto. *Douglas Asphalt Co. v. Qore, Inc.,* 541 F.3d 1269, 1273 (11th Cir. 2008). The court does not, however, accept as true conclusory statements, unwarranted deductions of fact or legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009); *Aldana v. Del Monte Fresh Produce, N.A.,* 416 F.3d 1242, 1248 (11th Cir. 2005). A complaint stating a claim for relief must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Consequently, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility that the defendant may have acted

16

unlawfully is insufficient. *Id.* Mere conclusory allegations are not entitled to a presumption of truth. *Randall v. Scott,* 610 F.3d 701, 709-710 (11th Cir. 2010). In *Twombly,* the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. "In *Twombly,* the Supreme Court distinguished 'plausible' claims from allegations that were merely 'conceivable.' *Speaker v. U.S. Dept. of Health and Human Servs.,* 623 F.3d 1371, 1380 (11th Cir. 2010). "[B]arren recitals of the statutory elements, shorn of factual specificity" are insufficient. *Id.* at 1384. "While this may mean that a civil plaintiff must do more detective work in advance [of filing], the reason is to protect society from the costs of highly unpromising litigation." *Franklin v. Curry,* 783 F.3d 1246, 1252 n. 6 (11th Cir. 2013) (quoting *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999).

### *Qualified Immunity Standard on a Motion to Dismiss*

Claims of individual capacity under Section 1983 that do not satisfy the factual content requirement of the *Twombly/Iqbal* standard are barred by the doctrine of qualified immunity. *Carollo v. Boria,* 833 F.3d 1322, 1328 (11th Cir. 2016). The entitlement to qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). "Because qualified immunity is an entitlement not to stand trial or face the other burdens of

litigation, questions of qualified immunity must be resolved at the earliest possible stage in litigation." *Gonzalez v. Reno,* 325 F.3d 1228, 1233 (11th Cir. 2003).

To obtain qualified immunity, a defendant must establish that the claims arise from acts taken within the scope of his discretionary authority, i.e., acts "carried out in the performance of his normal job duties" that were within the authority delegated to him by his employer. *Holloman v. Harland,* 370 F.3d 1252, 1265 (11th Cir. 2004). "[T]he determination that an officer was acting within his discretionary authority is quite a low hurdle to clear." *Godby v. Montgomery Cnty. Bd. of Educ.*, 996 F.Supp. 1390, 1401 (M.D. Ala. 1999) (citing *Jordan v. Doe,* 38 F.3d 1559 (11th Cir. 1994)). The court does not look at the alleged unlawfulness of the defendant's conduct at this stage. *Id.* Instead, the court determines "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of the government official's discretionary duties." *Id.*

The incident upon which Plaintiffs base their claims against Deputy Emberg arises from Deputy Emberg's duty as a deputy sheriff to investigate crimes. Therefore, Deputy Emberg has satisfied this element of the qualified immunity analysis, and the burden is on the Plaintiffs to sufficiently allege facts showing (1) that Deputy Emberg violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd,*

563 U.S. 731, 735 (2011); *see also, Epps v. Watson,* 492 F.3d 1240, 1243 (11th Cir. 2007).

As noted by the Supreme Court, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). Thus, "[i]f a plaintiff has not sufficiently alleged a violation of any constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a 'clearly established right" and the defendant is entitled to qualified immunity. *Id.*; *see also, Corbitt v. Vickers,* 929 F.3d 1304, 1311 (11th Cir. 2019).

## ARGUMENT

### I.    First Amendment Retaliation

#### A.    *Plaintiff Chantele Foster*

In Count Two, Plaintiff Chantele Foster asserts a claim for retaliatory arrest in violation of the First Amendment. (Doc. # 19, p. 14) The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech, or ... the right ... to petition the government for a redress of grievances." U.S. Const. Amend. I. The First Amendment protects "not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of

that right." *DeMartini v. Town of Gulf Stream,* 942 F.3d 1277, 1289 (11th Cir. 2019)

(quoting *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000)). In

*Hartman v. Moore,* 547 U.S. 250 (2006), the Supreme Court stated that "as a general

matter the First Amendment prohibits government officials from subjecting an

individual to retaliatory actions, including criminal prosecutions, for speaking out."

*Id.* at 256. To state a First Amendment retaliatory arrest claim pursuant to section

1983:

> a plaintiff generally must show: (1) [he] engaged in constitutionally
> protected speech, such as [his] right to petition the government for
> redress; (2) the defendant's retaliatory conduct adversely affected that
> protected speech and right to petition; and (3) a causal connection exists
> between the defendant's retaliatory conduct and the adverse effect on
> the plaintiff's speech and right to petition.

*DeMartini,* 942 F.3d at 1289. Mrs. Foster fails to state a claim for retaliation in

violation of the First Amendment because the Second Amended Complaint does not

allege any facts showing that she engaged in constitutionally protected speech. *See*

*DeMartini,* 942 F.3d at 1289 (to state a First Amendment retaliatory arrest claim a

plaintiff must show he engaged in constitutionally protected speech). Instead, the

Second Amended Complaint alleges that Mrs. Foster was arrested because her

husband exercised his First Amendment right to speak out. (Doc. # 19, nos. 40, 41)

Mrs. Foster alleges that her husband told Deputy Emberg that she was filing a

complaint against him for bullying her and then Deputy Emberg immediately

arrested her. (Doc. # 19, nos. 40, 41, 70, 71) There is no allegation that Mrs. Foster did in fact file a complaint against Deputy Emberg. The Second Amended Complaint is also devoid of any allegations that Mrs. Foster engaged in any protected speech that allegedly resulted in her arrest. Consequently, the clear import of these allegations is that <u>Mr. Foster</u> made the alleged protected statement, not Mrs. Foster, i.e., he told Deputy Emberg that Mrs. Foster was filing a complaint against him.

Mrs. Foster is attempting to base her retaliatory arrest claim, not on her own protected speech, but the alleged protected speech of her husband. In other words, this is not a case where Plaintiff Chantele Foster was "speaking out" and was arrested in retaliation for engaging in protected speech. *Hartman v. Moore,* 547 U.S. at 256. Instead, Mrs. Foster seeks to recover for her alleged retaliatory arrest that was based on the exercise of free speech by someone else. Very simply, the Second Amended Complaint fails to set forth any facts showing that Mrs. Foster engaged in protected speech and was arrested in retaliation <u>for her exercise of her First Amendment rights</u>. *See DeMartini,* 942 F.3d at 1289 (a plaintiff alleging retaliation in violation of the First Amendment must show he "engaged in constitutionally protected speech.") Ms. Foster therefore fails to state a plausible claim for retaliatory arrest in violation of her First Amendment rights.

The Second Amended Complaint alleges that Chantele Foster was arrested because she had "plans to exercise her free speech and make a report about [Deputy

Emberg] to his superior officer." (Doc. # 19, p. 14, no. 71) Therefore even if Mrs. Foster is alleging that the act that caused the retaliation against her was the fact, she was planning to file a complaint against Deputy Emberg, this is still not enough to state a plausible First Amendment retaliation claim. The legal authorities set forth above require that the plaintiff alleging retaliation engage in protected speech in order for the alleged retaliation against him to be actionable. Merely "planning" to engage in speech is not enough. *See DeMartini,* 942 F.3d at 1289 (a plaintiff alleging retaliation in violation of the First Amendment must show he "engaged in constitutionally protected speech."). Plaintiff Chantele Foster's retaliatory arrest claim is not plausible and must be dismissed.

Mrs. Foster also alleges that Deputy Emberg retaliated against her by spreading news about her arrest through the community. (Doc. # 19, p. 11, nos. 56, 74) Again, this alleged retaliation is based not on Mrs. Foster's protected speech, but the speech of someone else – her husband. For the reasons set forth above, Mrs. Foster did not engage in protected speech, and therefore has no claim for retaliatory arrest. *See DeMartini,* 942 F.3d at 1289. Additionally, if she is claiming that the protected speech was her "plans" to file a complaint, these "plans" are also not sufficient for the reasons set forth above. To have actionable retaliation, there must be protected speech – not merely the plan to engage in protected speech at a later

time. *See DeMartini,* 942 F.3d at 1289 (a plaintiff alleging retaliation in violation of the First Amendment must show he "engaged in constitutionally protected speech.")

Mrs. Foster's First Amendment claim is not plausible for another reason. The Second Amended Complaint merely makes a conclusory statement that Deputy Emberg told neighbors and others of the arrest. (Doc. # 19, p. 11, no. 55) There are no facts as to the actual content of the statements made by Deputy Emberg or to whom they were relayed, when they were made, and most importantly, there are no facts showing that the statements were false or defamatory. A false statement would not be protected by the First Amendment; but a true statement is protected, and thus cannot give rise to a retaliation action. (See below.) This allegation in the Second Amended Complaint is an unadorned conclusory statement lacking supporting facts, and is not entitled to any presumption of truth when considering this Motion to Dismiss. *Randall v. Scott,* 610 F.3d at 709-10; *Aldana v. Del. Monte Fresh Produce, N.A., Inc.,* 416 F.3d at 1246 (court will disregard "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts"); *Doe v. Samford Univ.,* Docket no. 2:21-cv-00871-ACA at * 6 (N.D. Ala. Aug. 15, 2021) (to survive a motion to dismiss, plaintiff must plead more than labels and conclusions).

It should be emphasized that Deputy Emberg's alleged statement that Plaintiff Chantele Foster had been arrested <u>is a true statement,</u> and not defamatory. *See Jones*

*v. Buzz Feed, Inc.,* Docket. No. 7:19-CV-00403-RDP at * 11 (N.D. Ala. Mar. 15, 2022); *Anderson v. City of Homewood,* Docket no. 2:16-cv-00439-TMP at * 15 (N.D. Ala. Jun. 12, 2018) (holding that Facebook post disclosing that plaintiff had been arrested was not false and thus was not defamatory). The Eleventh Circuit has found, as of 2019, that defamatory statements are <u>not</u> protected by the First Amendment and can give rise to a First Amendment claim for retaliation. *Echols v. Lawton,* 913 F.3d 1313, 1323 (11th Cir. 2019). <u>On the other hand, true speech or statements (i.e., such as the statement that the Fosters had been arrested) are not defamatory, and will have their own First Amendment protection against a claim for retaliation</u>. *See, e,g., Suarez Corp. Industries v. McGraw,* 202 F.3d 676 (4th Cir. 2000), cited by the Eleventh Circuit in *Echols v. Lawton,* 913 F.3d at 1320.

*In Suarez,* the court held that with respect to speech by an official that is true, the test to determine whether it is retaliatory and actionable as a violation of the First Amendment, is whether the defendant's speech was "threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action" from the defendant would imminently follow. *Suarez,* 202 F.3d at 687. In *Suarez,* the court noted the well-accepted principle that not all speech that allegedly causes harm will give rise to a First Amendment retaliation claim; and this is so even if the speech chills further expression. *Id.* The court further found that the comments at issue in that case did not give rise to an actionable claim for retaliation because

the comments were true, and they did not constitute threatening, coercive, or intimidating speech suggesting that the defendants would immediately initiate some type of punishment, sanction or adverse regulatory action against the plaintiff. *Id.* at 689-90.

Mrs. Foster has failed to allege sufficient facts to show that Deputy Emberg, by allegedly communicating to another person that she had been arrested, retaliated against her in violation of the First Amendment. To the contrary, the bare facts alleged in the Second Amended Complaint show that this was a true statement, that is protected by the First Amendment, and that it does not constitute retaliation because these words contain no threat, coercion, or intimidation. *See Suarez,* 913 F.3d at 689-91.

Although it is not clear, it appears that Plaintiff Chantele Foster may also be claiming in Count Two that Deputy Emberg violated her right to due process under the Fourteenth Amendment. (See Doc. # 19, no. 76.) This claim should also be dismissed. A claim of retaliation in response to protected speech is governed by and must be analyzed under the First Amendment, not the Fourteenth Amendment. *Echols v. Lawton,* 913 F.3d at 1326. Moreover, it is also well-settled that the Fourteenth Amendment does not provide redress for damage to reputation unless there is also a deprivation of liberty or property caused by the damage to reputation. *See Paul v. Davis,* 424 U.S. 693, 712 (1976). This type of deprivation has not been

alleged by Plaintiff Chantele Foster. She merely alleges that Deputy Emberg told her neighbors she had been arrested but she alleges no deprivation of life or property as a result of these statements.

### B.    Plaintiff Jeremy Foster[1]

Plaintiff Jeremy Foster also asserts a claim for retaliation based on Deputy Emberg allegedly telling others that he had been arrested, and that he had been fired from his job due to his arrest. (Doc. # 19, p. 10, nos. 72, 75) For the reasons discussed above, these allegations are conclusory, unsupported by any factual details, and thus fail to state a plausible claim for retaliation. Moreover, the alleged statement that Jeremy Foster was arrested was a true statement. It was not defamatory and thus has its own First Amendment protection from any claim for retaliation. (*See Suarez,* 202 F.3d at 687, and discussion above.) Plaintiff Jeremy Foster's claims for retaliation in violation of the First Amendment (with the exception of his claim for retaliatory arrest) are due to be dismissed. *See Suarez,* 202 F.3d at 689-91.

Jeremy Foster also appears to assert a claim for retaliation based on the Fourteenth Amendment in Count Two. (See Doc. # 19, no. 76) In the event he is making such a claim, it is due to be dismissed for the reasons set forth above.

### II.    Plaintiffs have failed to demonstrate that Deputy Emberg violated Clearly Established Constitutional Law.

---

[1] Defendant Emberg does not seek dismissal of Plaintiff Jeremy Foster's retaliatory arrest claim in Count Two at this juncture of the litigation.

Because Defendant Emberg has raised the defense of qualified immunity, the Fosters must demonstrate that the constitutional rights they claim were violated were clearly established at the time of the events in question. *Ashcroft v. al-Kidd,* 563 U.S. at 741. A plaintiff may show that a right was "clearly established" through "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute or case law that clearly establishes a constitutional right; or (3) conduct that is so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016). If the plaintiff relies upon case law, the decisions must be from the United States Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court. *McClish v. Nugent,* 483 F.3d 1231, 1237 (11th Cir. 2007). "However it is shown, 'clearly established law' must be 'particularized' to the facts of the case, *Anderson v. Creighton,* 483 U.S. 635, 640 (1987), and must not be defined 'at a high level of generality,' *al-Kidd,* 563 U.S. at 742." *Prosper v. Martin,* 989 F.3d. 1242, 1251 (11th Cir. 2021). While there is no requirement that a plaintiff find a case precisely on point, the Eleventh Circuit has stated that "a clearly established right is one that is sufficiently clear that <u>every reasonable official</u> would have understood that what he is doing violates that right." *Young v. Borders*, 850 F.3d 1274, 1282 (11th Cir. 2017). "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly

incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1317 (11th Cir. 2003). Indeed, the Supreme Court has recently cautioned courts to avoid defining clearly established law at a "high level of generality" and that "[i]t is not enough that the rule is suggested by then-existing precedent." *District of Columbia v. Wesby*, _ U.S. _, 138 S. Ct. 577, 590 (2018). Instead, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *Wesby*, 138 S. Ct. at 590; *see also, Corbitt v. Vickers,* 929 F.3d at 1312, (quoting *Hope v. Pelzer,* 536 U.S. 730, 741 (2002) (the "'salient question is whether the state of the law gave the defendants 'fair warning' that their alleged conduct was unconstitutional.")).

Based on the facts, as alleged in the Second Amended Complaint, Plaintiffs cannot demonstrate that Deputy Emberg violated clearly established law pertaining to retaliatory arrests and damage to reputation in violation of the First and Fourteenth Amendments. Deputy Emberg is therefore entitled to qualified immunity.

### III.    State-Law Claims

#### A.    *Deputy Emberg is entitled to State Immunity.*

Plaintiffs assert state-law claims seeking damages for malicious prosecution and abuse of process. These claims are due to be dismissed because as a deputy sheriff, Deputy Emberg is entitled to absolute State Immunity. According to Art. I,

§ 14, *Const. of Ala.* 1901, "the State of Alabama shall never be made a defendant in any court of law or equity." "Under Alabama law, both sheriffs and deputy sheriffs are considered executive officers of the state, immune from suit under Section 14." *Tinney v. Shores,* 77 F.3d 378, 383 (11th Cir. 1996); *Bozeman v. Cnty. of Elmore,* Docket no. 2:20-cv-640-ECM at * 5 (M.D. Ala. July 14, 2021); *Wilson v. Valenza,* Docket no. 1:20-cv-289-RAH at *3 (M.D. Ala. Dec. 28, 2020); *Daniel v. Howell,* Docket no. 2:20-cv-145-WKW at * 6 n. 6 (M.D. Ala. Nov. 30, 2020). Pursuant to Article I, § 14, Alabama sheriffs and deputy sheriffs have absolute immunity from claims for damages against them in their individual and official capacities when they are sued for acts that occurred "in the line and scope of their employment." *Poiroux v. Rich,* 150 So. 3d 1027, 1038-39 (Ala. 2014); *Ex parte Donaldson,* 80 So. 3d 895, 898 (Ala. 2011); *Ex parte Sumter Cnty.*, 953 So. 2d 1235, 1239 (Ala. 2006).

While there are some exceptions to the absolute immunity afforded sheriffs and deputy sheriffs, they are not applicable here because Plaintiffs seek only money damages in this case. Those exceptions to immunity are:

> (1) actions to compel him to perform his duties, (2) to compel him to perform ministerial act, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

*Poiroux v. Rich,* 150 So. 3d at 1038 (confirming the only exceptions to a sheriff's immunity are those for injunctive and declaratory relief and that sixth exception set forth in *Ex parte Moulton* for actions that are in bad faith, fraudulently, beyond the official's authority, or under mistaken interpretation of the law, do not apply to actions against sheriffs); *Ex parte Purvis,* 689 So. 2d at 795-96 (confirming that the exception to state immunity for acts that are willful, malicious, illegal, fraudulent, in bad faith, beyond the authority of the officer, or undertaken pursuant to a mistaken interpretation of the law do not apply to sheriffs); *see also, Aaron v. Hudson, Docket no. 6:21-cv-01058-LSC at \* 5-6 (N.D. Ala. Apr. 11, 2022) (same); Martin v. Sheriff of Walker Cnty.,* Docket no. 6:19-cv-01534-LSC at \* 10 (N.D. Ala. May 13, 2020) (same); *Daniel v. Howell,* at \* 6 n. 6 (same); *Callwood v. Phenix City, Ala.,* Docket no. 2:15-cv-182-WHA at \* 7 (M.D. Ala. Sept. 8, 2015) (same); *Bozeman v. Cnty. of Elmore,* at \* 5 (only exceptions to state-immunity for sheriffs (and deputies, their alter egos) is for injunctive and declaratory relief); *Wilson v. Valenza,* at \* 6 (confirming that only exceptions to immunity for sheriffs are actions for injunctive and declaratory relief); *Chappell v. City of Clinton,* Docket no. 2:17-cv-370-GMB at \* 8 (M.D. Ala. Sep. 14, 2017) (same).

The recent case of *Reynolds v. Calhoun*, Docket no. 1:21-cv-649-ECM (M.D. Ala. Jan. 13, 2023), also supports a finding of State Immunity for Deputy Emberg. In *Reynolds*, the court held that *Ex parte Pinkard* (a case upon which Plaintiffs rely)

does not apply to cases involving sheriffs or their deputies and other executive officers with special status in Article V, § 112 *Const. of Ala. 1901*. *See Reynolds*, at * 5-6. Instead, State Immunity bars state-law claims against sheriff's deputies, even in their individual capacities, when their acts were performed in the line and scope of their employment as deputy sheriffs because such actions "inherently constitute actions against the State, and such actions are prohibited" by Art. I, § 14, *Const. of Ala. 1901*. *See Reynolds*, at * 10.

Plaintiffs' state-law claims in this case are based on Deputy Emberg's alleged unlawful arrest, resulting prosecution and detention of the Plaintiffs. These are actions that clearly fall within the duties of Alabama sheriffs and their deputies. *See Reynolds,* at * 13. Consequently, Plaintiffs' state-law claims in this case are in effect against the State of Alabama. *Id*. at * 10; *see also, Johnson v. Colbert Cnty.*, Docket no. 3:20-cv-01923-AKK at * 7 (N.D. Ala. Aug. 30, 2021). The only exceptions to this immunity for executive officers like sheriffs and deputies are actions seeking declaratory and injunctive relief. *Id*.

Plaintiffs admit that Deputy Emberg was employed as a deputy sheriff and that he was acting pursuant to the "customs, policies and practices" of the Walker County Sheriff's Office at the time of the allegations set forth in the Second Amended Complaint. (Doc. # 19, no. 8) Alabama takes a broad view of actions taken in the line and scope of employment. It is well-settled under Alabama law that if an

employee is hired to perform a certain service, "whatever he does to that end, or in furtherance of the employment, is deemed by law to be an act done within the line and scope of the employment." *Doe v. Swift,* 570 So. 2d 1209, 1211 (Ala. 1990); *Nelson v. Johnson*, 88 So. 2d. 358, 361 (Ala. 1956). Clearly, in investigating the 911 domestic calls, and filing criminal complaints against the Fosters, Deputy Emberg satisfies the test of acting in the line and scope of his duties of a deputy sheriff. Additionally, Plaintiffs seek only money damages from Deputy Emberg. (Doc. # 19, p. 18) Plaintiffs do not seek equitable or declaratory relief. As a result, the above limited exceptions (injunctive and declaratory relief) to the absolute immunity afforded sheriffs and deputy sheriffs are not applicable. These are the only exceptions to the immunity afforded sheriffs and deputy sheriffs under Alabama law. *Poiroux v. Rich,* 150 So. 3d at 1038, and cases cited above. Plaintiffs' state law claims for malicious prosecution and abuse of process are thus barred by State Immunity.

### B.    *Plaintiffs have failed to state plausible state-law claims for Malicious Prosecution.*

In the first Count Three of the Second Amended Complaint, Plaintiffs assert state-law claims for malicious prosecution. Under Alabama law, malicious prosecution claims are not favored because they are against public policy. *Kmart Corp. v. Perdue,* 708 So. 2d 106, 108 (Ala. 1997). A plaintiff asserting such a claim must show (1) a judicial proceeding initiated by the defendant; (2) without probable

cause; (3) that was initiated with malice; (4) that the judicial proceeding terminated in favor of the plaintiff; and (5) that the plaintiff suffered damage from the prosecution of the action. *Id.* at 109. Plaintiffs' claims for malicious prosecution should be dismissed because they cannot show no. 4 above – that the criminal proceedings against them terminated in their favor. To the contrary, the pleadings and orders entered in the criminal proceedings show that the dismissal was pursuant to a compromise or agreement between the parties.

It is well settled that when the withdrawal of criminal charges is pursuant to a compromise or agreement of the parties, it does not constitute a termination of the criminal proceeding in favor of the accused, and therefore cannot support a claim for malicious prosecution. *Bryd v. City of Daphne,* Docket no. CA 11-0468-CG-C at * 9 (S.D. Ala. Mar. 9, 2012); *see also, Chatman v. Pizitz, Inc.,* 429 So. 2d 969, 971-72 (Ala. 1983). Favorable determinations for the accused will also not be found when the case is dismissed "in the interests of justice." *Byrd,* at * 9.

In *Byrd,* the court, considering a malicious prosecution claim, reviewed the order of dismissal of the criminal case below and found that it indicated that an agreement had been reached to dismiss the charges in exchange for the defendant agreeing to return to his home state. *Id.* * 9, n. 15. According to the court, because it was "not at all clear … that the dismissal of charges was not the result of a

33

compromise or agreement…" the malicious prosecution claim had not been properly pleaded and was dismissed. *Id.* at * 9.

In the present case, the evidence of an agreement as to the dismissal of the charges is plainly evident based on the pleadings filed with the criminal court. The district attorney and Plaintiffs' lawyer (who was representing the Fosters in each criminal case filed against them) jointly asked the court to dismiss the criminal charges in each of their cases. (Exhibits 1-2 attached hereto) Each joint motion stated that neither of the Plaintiffs had signed complaints against each other; that they wanted the charges against the other dismissed; and that each Plaintiff, as well as the arresting officer, and the district attorney, had "<u>agreed</u>" that the cases should be dismissed. (Id.) The court dismissed the charges, and then the district attorney asked that this dismissal be set aside so that a hearing could be held by the court, with all parties present, which would allow the court to reach informed and intelligent decisions that "serve the best interest of justice and judicial economy."  (Exhibits 5-6 attached hereto)

The court thereafter held a hearing and entered a second order dismissing the charges against the Fosters. (Doc. # 19, p. 11, no. 60) The court's orders in each case found that the cases should be dismissed "with the following factors considered:"

> That on October 16, 2020, Jeremy Foster and his wife Chantele Foster were both arrested for the above said offense, which is a Class A misdemeanor.

That neither party filed formal charges against the other and both were arrested by the responding law enforcement officer who arrived on scene to investigate a domestic disturbance.

That Jeremy Foster appears before this Court as a defendant and a crime victim. Likewise Chantele Foster appears as both a defendant and crime victim.

That the alleged facts giving rise to these charges appears to have occurred at the same time or during the same event.

That furthermore, the Court having heard testimony from the parties finds neither party sustained injuries; that neither party wants to pursue prosecution; and that the parties are continuing to live together with no intent to separate or file for divorce.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the above-style cause is hereby dismissed costs remitted.

(Exhibits 7-8) [2]

What is unique about the situation is that each Plaintiff occupied the status of crime victim and defendant in the criminal cases. In one case Chantele Foster was the victim and her husband was the defendant. In the other case, Chantele Foster was the defendant and Jeremy Foster was the victim. As evidenced by the official court documents, the Fosters told the court (and their counsel and the district attorney as

---

[2] Consideration of the pleadings and orders of the criminal court is proper, and this Court may take judicial notice of same, without converting this motion to a motion for summary judgment. *Sutton v. Marshall,* 423 F.Supp.3d 1294, 1296 (N.D. Ala. 2019).

well) that they did not want to testify against each other or pursue charges against each other; that they were back together; and that they had no intent to divorce. Based on these facts, the district attorney and Plaintiffs' attorney jointly moved for a dismissal of the charges, based on their "agreement," subject to the court conducting a hearing with both parties present. These representations by the Fosters were relied upon by the court in dismissing both criminal cases.

In accordance with the above legal authorities, the dismissals were based upon an agreement/compromise among the parties (both of whom were victim and defendant) in the two criminal cases. In other words, there was an agreement (that is reflected in the court's order) that "we are back together now and let's dismiss our claims against each other," and this was acceptable to the attorneys as well. Under these circumstances, the dismissals were obtained through agreement or compromise, or in the alternative, were based on the interest of justice or judicial economy after the hearing and in accordance with the district attorney's request. (See Exhibits 5-6.) In either scenario, the dismissals do not amount to favorable terminations for the Fosters that will give rise to viable malicious prosecution claims. Plaintiffs' state-law claims for malicious prosecution are thus due to be dismissed. *Byrd,* at * 9; *see also, Pittman v. State Farm Fire & Cas. Ins. Co.,* Docket no. 2:14-cv-959-MHT-PWG at * 13 (M.D. Ala. Apr. 13, 2015) (holding that where motion to dismiss the criminal case showed that the state and the defendant agreed to dismiss

the case, state-law claim for malicious prosecution claim was properly dismissed, and further noting that when the state dismisses a case because of an agreement and compromise between the parties, the prosecution has not terminated in favor of the party pursuing a malicious prosecution claim).

### C.    Plaintiffs have failed to state plausible state-law claims for Abuse of Process.

The second Count Three in the Second Amended Complaint is a state-law claim for Abuse of Process. Plaintiffs claim that on October 27, 2020, Deputy Emberg secured an arrest warrant and filed criminal complaints against them with an ulterior motive, i.e, so he could stand a better chance of taking Jeremy Foster's job. (Doc. # 19, no. 89)

"The elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice." *C.C. & J., Inc. v. Hagood,* 711 So. 2d 947, 950 (Ala. 1998). Abuse of process is different from malicious prosecution: "Malicious prosecution concerns the wrongful issuance of process; abuse of process concerns the wrongful use of process <u>after it has been issued</u>." *Id.* (Emphasis added). Under Alabama law, "an abuse of process claim is proper only when the action results in the issuance of some form of special process from the court, such as a writ of garnishment." *Ramsey v. Leath,* 706 F.2d 1166, 1169 (11th Cir. 1983). To state a plausible claim for abuse of process, the complaint must allege "that a suit had been legally filed for a proper purpose," but once filed, "the process

37

of the court ... had been improperly used." *Files v. Kilgore,* Docket no. 1:17-cv-01881-KOB-HNJ at * 8 (N.D. Ala. Jan. 29, 2018) (citing) *Ancora Corp. v. Stein,* 445 F.2d 431, 433 (5th Cir. 1971). When a defendant merely carries out the process to its authorized conclusion (even if the defendant has bad intentions) an abuse of process claim is not stated. *Id.*; *Willis v. Parker,* 814 So. 2d 857, 863 (Ala. 2001); *Yeomans v. Forster & Howell, Inc.,* Docket no. 1:09-cv-488-WHA at * 12-13 (M.D. Ala. 2010).

In this case, Plaintiffs complain about the improper filing and use of the warrants/complaints that ***initiated*** the criminal actions against them on October 27, 2020. (Doc. # 19, nos. 88-91) This is in the nature of a malicious prosecution claim, which has already been asserted. Plaintiffs do not complain about any special process of the court that was improperly issued after the case was initiated – which is the type of action that is the basis for a viable abuse of process claim. The facts alleged in the Second Amended Complaint show nothing but the criminal cases being initiated on October 27, 2020, with the filing of the complaints/charges, and then later being dismissed one month later. After the Plaintiffs' charges were filed, no other process of the court was issued like a writ of attachment, or writ of garnishment. Plaintiffs have therefore failed to allege a plausible claim for abuse of process. *Files v. Kilgore,* at * 8; *Ray v. Calhoun Cnty.,* Docket no. 1:13-cv-1860-VEH at * 6 (N.D. Ala. Oct. 13, 2017) (acknowledging that under Alabama law, to

state a claim for abuse of process, the plaintiff must complain about a special process issued by the court for an improper purpose (such as a writ of attachment) and not merely the process that initiated the lawsuit). Plaintiffs' state-law claims for abuse of process, since they are based solely on the initiating criminal complaints, and not a later wrongful issuance of process, are due to be dismissed.

## CONCLUSION

Based on the foregoing, Deputy Emberg respectfully moves the Court to dismiss the above claims and grant him any other relief to which he may be entitled.

<u>**s/ Constance Caldwell Walker**</u>
CONSTANCE CALDWELL WALKER
(ASB-5510-L66C)
Attorney for Defendant Deputy Kevin Emberg

**OF COUNSEL:**

**WEBB MCNEILL WALKER PC**
One Commerce Street, Suite 700 (36104)
Post Office Box 238
Montgomery, Alabama 36101
(334) 262-1850 – T
(334) 262-1889 – F
cwalker@wmwfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 25th day of August, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide notice to the following CM/ECF participants:

Charles C. Tatum, Jr.
Seth L. Diamond
Post Office Box 349
Jasper, Alabama 35502
Ph: (205) 387-0708
Fax: (205) 387-0705
Ctatum7@aol.com
sethdiamond@sethdiamondlaw.com

s/Constance Caldwell Walker
OF COUNSEL

# EXHIBIT 1

# IN THE DISTRICT COURT OF WALKER COUNTY

STATE OF ALABAMA                )
                                )
                                )
V                               )        Case Number: DC2020-901381
                                )
                                )
CHANTELE N FOSTER,              )

# FILED

## NOV 2 4 2020

## JOINT MOTION TO DISMISS *Susan Odom*

CIRCUIT CLERK-WALKER COUNTY, AL

**COMES NOW**, the Defendant, Chantele Foster, by and through her Attorney, Steven D Gravlee and the State of Alabama by and through Assistant District Attorney Thomas Burgett and hereby asks this Honorable Court for an Order dismissing the above styled cause. As grounds the parties would show:

1. That the Defendant was arrested on or about October 28th, 2020 and charged with Domestic Violence 3rd degree.

2. That the alleged victim was her husband, Jeremy Foster, who was also charged in with Domestic Violence 3rd with the Defendant in this matter being the alleged victim in his case.

3. That neither Jeremy Foster nor Chantele Nicole Foster signed complaints against one another and both wish for this matter to be dismissed with prejudice.

4. That the Defendant in the above case, the alleged victim, the arresting officer and the District Attorney all agree that this matter is due to be dismissed.

WHEREFORE, PREMISE CONSIDERED, all parties involved in this matter hereby ask this Honorable Court to Dismiss the Above styled case with prejudice.

Respectfully Submitted,

~~Thomas Burgett~~ Blake A. Owens
Assistant District Attorney

Steven D. Gravlee
PO Box 184
Sumiton, Alabama 35148
205-648-7111

# EXHIBIT 2

## IN THE DISTRICT COURT OF WALKER COUNTY

STATE OF ALABAMA        )
        )
        )
V        )    Case Number: DC2020-901382
        )
        )
JEREMY FOSTER,        )

**FILED**

NOV 2 4 2020

*Susan Odom*

CIRCUIT CLERK-WALKER COUNTY, AL

## JOINT MOTION TO DISMISS

**COMES NOW**, the Defendant, Jeremy Foster, by and through his Attorney, Steven D Gravlee and the State of Alabama by and through Assistant District Attorney Thomas Burgett and hereby asks this Honorable Court for an Order dismissing the above styled cause. As grounds the parties would show:

1. That the Defendant was arrested on or about October 28th, 2020 and charged with Domestic Violence 3rd degree.

2. That the alleged victim was his wife, Chantele Nicole Foster, who was also charged in with Domestic Violence 3rd with the Defendant in this matter being the alleged victim in her case.

3. That neither Jeremy Foster nor Chantele Nicole Foster signed complaints against one another and both wish for this matter to be dismissed with prejudice.

4. That the Defendant in the above case, the alleged victim, the arresting officer and the District Attorney all agree that this matter is due to be dismissed.

WHEREFORE, PREMISE CONSIDERED, all parties involved in this matter hereby ask this Honorable Court to Dismiss the Above styled case with prejudice.

Respectfully Submitted,

~~Thomas Burgett~~ Blake A. Owens

Assistant District Attorney

Steven D. Gravlee
PO Box 184
Sumiton, Alabama 35148
205-648-7111

# EXHIBIT 3

ELECTRONICALLY FILED
11/24/2020 2:33 PM
64-DC-2020-901381.00
CIRCUIT COURT OF
WALKER COUNTY, ALABAMA
SUSAN ODOM, CLERK

## IN THE DISTRICT COURT OF WALKER C...

STATE OF ALABAMA )
)
)
V )          Case Number: DC2020-901381
)
)
CHANTELE N FOSTER, )

## ORDER OF DISMISSAL

THIS CAUSE having come before this Honorable Court upon Joint Motion by the Parties to Dismiss.

The Court having read and understood the Joint Motion to Dismiss is of the belief that said Motion is due to be Granted.

IT IS THEREFORE the Order of this Court that the above styled case is hereby dismissed with prejudice and all costs remitted.

Done and Ordered this 24th day of November, 2020.

Judge Sherer

# EXHIBIT 4

ELECTRONICALLY FILED
11/24/2020 2:34 PM
64-DC-2020-901382.00
CIRCUIT COURT OF
WALKER COUNTY, ALABAMA
SUSAN ODOM, CLERK

## IN THE DISTRICT COURT OF WALKER C

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| | ) |
| V      . | ) |
| | ) |
| | ) |
| JEREMY FOSTER, | ) |

Case Number: DC2020-901382

## ORDER OF DISMISSAL

THIS CAUSE having come before this Honorable Court upon Joint Motion by the Parties to Dismiss.

The Court having read and understood the Joint Motion to Dismiss is of the belief that said Motion is due to be Granted.

IT IS THEREFORE the Order of this Court that the above styled case is hereby dismissed with prejudice and all costs remitted.

Done and Ordered this ___24th___ day of November, 2020.

Judge Sherer

# EXHIBIT 5

DOCUMENT 15

ELECTRONICALLY FILED
11/30/2020 2:21 PM
64-DC-2020-901381.00
CIRCUIT COURT OF
WALKER COUNTY, ALABAMA
SUSAN ODOM, CLERK

## IN THE DISTRICT COURT OF WALKER COUNTY, ALABAMA

| | | |
|---|---|---|
| STATE OF ALABAMA, | ) | |
| PLAINTIFF | ) | |
| | ) | |
| VS. | ) | CASE No.: DC-2020-901381 |
| | ) | |
| CHANTELE NICOLE FOSTER, | ) | |
| DEFENDANT. | ) | |

## MOTION TO SET ASIDE ORDER

Comes now the State of Alabama, by and through the District Attorney, Bill Adair, Jr., or one of his duly authorized assistants and requests that this Honorable Court set aside the Order of Dismissal in this matter, issued on November 24, 2020, and as grounds therefore, the State asserts separately and severally as follows:

1.  That subsequent to signing the Joint Motion to Dismiss, Assistant District Attorney Blake Owens learned the motion as prepared by defense counsel does not accurately reflect the State's position, nor the procedural process that the State believes should have occurred.

2.  The State maintains the position that this Honorable Court should hold a hearing on defense motion to dismiss and require all parties to be present, which will allow the Court to reach an informed and intelligent decision that serves the best interest of justice and judicial economy.

**Wherefore Premises Considered**, the State respectfully requests that this Honorable Court enter an Order to Set Aside the Order of Dismissal, issued on November 24, 2020, and set this matter for a hearing.

**RESPECTFULLY SUBMITTED**, this the 30th day of November, 2020.


s/ Blake A. Owens (OWE 050)
Blake A. Owens
Assistant District Attorney


## CERTIFICATE OF SERVICE

I certify that I filed the foregoing using the AlaFile system which will send notice of such filing to the attorneys of record in this matter, as well as mailing a copy to parties who are not participants in the AlaFile system.


s/ Blake A. Owens
Assistant District Attorney

# EXHIBIT 6

ELECTRONICALLY FILED
11/30/2020 2:20 PM
64-DC-2020-901382.00
CIRCUIT COURT OF
WALKER COUNTY, ALABAMA
SUSAN ODOM, CLERK

## IN THE DISTRICT COURT OF WALKER COUNTY, ALABAMA

| | | |
|---|---|---|
| STATE OF ALABAMA, | ) | |
| PLAINTIFF | ) | |
| | ) | |
| VS. | ) | **CASE No.: DC-2020-901382** |
| | ) | |
| JEREMY GARRETT FOSTER, | ) | |
| DEFENDANT. | ) | |

## MOTION TO SET ASIDE ORDER

Comes now the State of Alabama, by and through the District Attorney, Bill Adair, Jr., or one of his duly authorized assistants and requests that this Honorable Court set aside the Order of Dismissal in this matter, issued on November 24, 2020, and as grounds therefore, the State asserts separately and severally as follows:

1. That subsequent to signing the Joint Motion to Dismiss, Assistant District Attorney Blake Owens learned the motion as prepared by defense counsel does not accurately reflect the State's position, nor the procedural process that the State believes should have occurred.

2. The State maintains the position that this Honorable Court should hold a hearing on defense motion to dismiss and require all parties to be present, which will allow the Court to reach an informed and intelligent decision that serves the best interest of justice and judicial economy.

**Wherefore Premises Considered**, the State respectfully requests that this Honorable Court enter an Order to Set Aside the Order of Dismissal, issued on November 24, 2020, and set this matter for a hearing.

**RESPECTFULLY SUBMITTED**, this the 30th day of November, 2020.


s/ Blake A. Owens (OWE 050)
Blake A. Owens
Assistant District Attorney


## CERTIFICATE OF SERVICE

I certify that I filed the foregoing using the AlaFile system which will send notice of such filing to the attorneys of record in this matter, as well as mailing a copy to parties who are not participants in the AlaFile system.


s/ Blake A. Owens
Assistant District Attorney

# EXHIBIT 7

ELECTRONICALLY FILED
12/9/2020 10:45 AM
64-DC-2020-901381.00
CIRCUIT COURT OF
WALKER COUNTY, ALABAMA
SUSAN ODOM, CLERK

**IN THE DISTRICT COURT FOR WALKER COUNTY**

STATE OF ALABAMA,         )
     Plaintiff,           )
                      )
vs.                   ) Case No.: DC-2020-901381
                      )
CHANTELE NICOLE FOSTER,   )
     Defendant.         )

**AMENDED ORDER**

This case having come before this Court with the Defendant being present with his attorney, the Honorable Steven Gravlee, and the State being represented by Thomas Burgett, Assistant District Attorney, and Blake Owens, Assistant District Attorney, is hereby **DISMISSED** with the following factors considered:

1. That before this Court is a matter involving cross-complaints for Domestic Violence-Harassment, pursuant to Alabama Code § 13A-6-132.

2. That on October 16, 2020 Jeremy Foster and his wife Chantele Foster were both arrested for the above said offense, which is a Class A misdemeanor.

3. That neither party filed formal charges against the other and both were arrested by the responding law enforcement officer who arrived on scene to investigate a domestic disturbance.

4. That Jeremy Foster appears before this Court as a defendant and a crime victim. Likewise, Chantele Foster appears as both a defendant and crime victim.

5. That the alleged facts giving rise to these charges appears to have occurred at the same time or during the same event.

6. That furthermore, the Court having heard testimony from the parties finds neither party sustained injuries; that neither party wants to pursue prosecution; and that

the parties are continuing to live together with no intent to separate or file for divorce.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the above-style cause is hereby dismissed, costs remitted.

**DONE AND ORDERED** this the _____ day of _____ 2020.

_____
**CIRCUIT JUDGE**

# EXHIBIT 8

ELECTRONICALLY FILED
12/9/2020 10:43 AM
64-DC-2020-901382.00
CIRCUIT COURT OF
WALKER COUNTY, ALABAMA
SUSAN ODOM, CLERK

**IN THE DISTRICT COURT FOR WALKER COUNTY**

| | | |
|---|---|---|
| **STATE OF ALABAMA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: DC-2020-901382** |
| | ) | |
| **JEREMY GARRETT FOSTER,** | ) | |
| **Defendant.** | ) | |

## AMENDED ORDER

This case having come before this Court with the Defendant being present with his attorney, the Honorable Steven Gravlee, and the State being represented by Thomas Burgett, Assistant District Attorney, and Blake Owens, Assistant District Attorney, is hereby **DISMISSED** with the following factors considered:

1. That before this Court is a matter involving cross-complaints for Domestic Violence-Harassment, pursuant to Alabama Code § 13A-6-132.

2. That on October 16, 2020 Jeremy Foster and his wife Chantele Foster were both arrested for the above said offense, which is a Class A misdemeanor.

3. That neither party filed formal charges against the other and both were arrested by the responding law enforcement officer who arrived on scene to investigate a domestic disturbance.

4. That Jeremy Foster appears before this Court as a defendant and a crime victim. Likewise, Chantele Foster appears as both a defendant and crime victim.

5. That the alleged facts giving rise to these charges appears to have occurred at the same time or during the same event.

6. That furthermore, the Court having heard testimony from the parties finds neither party sustained injuries; that neither party wants to pursue prosecution; and that

the parties are continuing to live together with no intent to separate or file for divorce.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the above-style cause is hereby dismissed, costs remitted.

**DONE AND ORDERED** this the ___9th___ day of ___December___ 2020.

/s/

**CIRCUIT JUDGE**