FILED

2024 May-24  PM 04:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

|  |  |  |
|---|---|---|
| CHANTELE FOSTER and JEREMY FOSTER, | ] ] ] | |
| Plaintiffs, | ] ] | |
| v. | ] ] | 6:22-cv-01275-ACA |
| KEVIN EMBERG, | ] ] | |
| Defendant. | ] | |

## <u>AMENDED MEMORANDUM OPINION</u>

The court previously entered a memorandum opinion on the motion to dismiss by Defendant Kevin Emberg. Because of a scrivener's error, the court **VACATES** the prior memorandum opinion and **ENTERS** the following in its place:

After Plaintiff Jeremy Foster told Defendant Kevin Emberg, a Walker County deputy sheriff, that Plaintiff Chantele Foster was going to file a complaint against Mr. Emberg, Mr. Emberg arrested the Fosters. The district attorney criminally charged the Fosters with domestic violence harassment. After the arrest, Mr. Emberg told coworkers and neighbors that the Fosters had been arrested. Mr. and Ms. Foster bring this action under 42 U.S.C. § 1983 against Mr. Emberg in his individual capacity. (Doc. 19). Except for Count Four, which is brought only by Mr. Foster, the Fosters each assert a claim against Mr. Emberg for:

| | |
|---|---|
| **Count One:** | Unlawful seizure of a person in violation of the Fourth Amendment |
| **Count Two:** | First amendment retaliation, including: |

        1. Retaliatory arrest; and

        2. Defamation

| | |
|---|---|
| **Count Three:** | Malicious prosecution |
| **Count Four:**[1] | Abuse of process (brought only by Mr. Foster) |

Mr. Emberg moves to dismiss all claims except for: Count One and Mr. Foster's claim for First Amendment retaliatory arrest in Count Two. (Doc. 31 at 1–2). The court **WILL GRANT IN PART** and **DENY IN PART** Mr. Emberg's motion to dismiss. The court **WILL DENY** Mr. Emberg's motion to dismiss Mr. Foster's First Amendment retaliatory defamation claim. The court **WILL DENY** the motion to dismiss the deliberate indifference claim **AS MOOT** because the court does not construe the complaint as asserting such a claim. The court **WILL DENY** Mr. Emberg's motion to dismiss the malicious prosecution claims.

The court **WILL GRANT** Mr. Emberg's motion to dismiss Ms. Foster's First Amendment retaliatory arrest and defamation claims and **WILL DISMISS** those claims **WITH PREJUDICE**. And the court **WILL GRANT** Mr. Emberg's motion

---

[1] The count is titled "COUNT THREE," but it is the fourth count. (*See* doc. 19 ¶¶ 61–92).

to dismiss the abuse of process claim and **WILL DISMISS** that claim **WITH PREJUDICE**.

## I.    BACKGROUND

In deciding a motion to dismiss, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

Chantele Foster, a paralegal at a local law firm, and Jeremy Foster, a probation officer, were husband and wife. (Doc. 19 ¶¶ 9–11). In October 2020, the couple had an argument at home. (*Id.* ¶¶ 12–13). Mr. Foster disengaged from the argument, went into the bedroom to lay down, and inspected his service pistol. (*Id.* ¶ 12, 14). Ms. Foster entered their bedroom and "made an off-hand remark that his gun did not scare her." (*Id.* ¶ 14). Her nine-year-old son heard the comment and dialed 911. (Doc. 19 ¶ 15). Walker County Deputy Kevin Emberg and other deputy sheriffs responded to the call. (*Id.* ¶¶ 18, 30).

Mr. Emberg, the senior deputy, interviewed Mr. Foster. (*Id.* at ¶ 19). Mr. Foster stated that his wife was the aggressor but assured him that they were just arguing and did not need the deputies' assistance. (*Id.* ¶¶ 19–20). Mr. Emberg warned the Fosters that he could take them both to jail and told Ms. Foster that she had to leave the home. (Doc. 19 ¶ 21). Mr. Emberg warned Ms. Foster that he would

arrest her if he ever caught her in the home again. (*Id.*). Mr. Emberg never made a report of the incident. (*Id.* ¶ 23).

The next day, the Fosters decided to separate and mutually decided Ms. Foster would stay in the home because Ms. Foster's mother owned it. (*Id.* ¶ 24). But Ms. Foster was afraid that Mr. Emberg would arrest her if he came back to the house. (*Id.* ¶ 25). A friend told her that Mr. Emberg should have made an incident report and was trying to bully her into leaving the home. (Doc. 19 ¶ 25). Ms. Foster called Mr. Emberg's commanding officer and left a message "complaining that [Mr.] Emberg had failed to make an incident report." (*Id.* ¶ 26). Later that day, the commanding officer's secretary called Ms. Foster and let her know they would send a deputy to her home to make a report. (*Id.* ¶ 27).

At some point before a deputy came to her home to make a report, the Fosters decided together that Ms. Foster would file a written complaint against Mr. Emberg: Mr. Foster would research the regulations Mr. Emberg violated and Ms. Foster would write the complaint. (*Id.* ¶ 29).

When Deputy Legg came to the house and made a report of the incident, he told Ms. Foster that if she got into another argument with Mr. Foster, she should call him, and he would come out to deescalate things. (Doc. 19 ¶¶ 30–31). Later that same evening, Ms. Foster became upset with Mr. Foster about some marital property he was trying to take and called 911. (*Id.* ¶¶ 32–33).

4

Mr. Emberg was one of the responding deputies. (*Id.* ¶ 36). He overheard Ms. Foster tell her mother that Mr. Foster called her a "bitch"[2] and that Mr. Foster needed to "powder his vagina." (*Id.* ¶ 36) (quotation marks omitted). Mr. Foster was outside and did not hear the comment. (Doc. 19 ¶ 36). The deputies decided Mr. Foster should collect his possessions and leave the house. (*Id.* ¶ 39). When Mr. Foster learned of that plan, he said to Mr. Emberg: "I don't know why y'all are doing her any favors Kevin. She's filing a complaint against you with the Sheriff because she said you were bullying her the other night when you were out here." (*Id.* ¶ 40) (quotation marks omitted).

Mr. Emberg said, "oh really" and arrested Ms. Foster. (*Id.* ¶ 41) (quotation marks omitted). Mr. Foster told Mr. Emberg he could not arrest Ms. Foster in retaliation for her making a report against him. (Doc. 19 ¶ 42). In response, Mr. Emberg told another deputy to "hook-him-up too" and that officer arrested Mr. Foster. (*Id.* ¶ 43) (quotation marks omitted). Mr. Emberg told Ms. Foster's mother that he arrested Ms. Foster for her "own good" and in the car ride to the jail he told Ms. Foster she "needed to divorce [Mr. Foster] and maybe now she would listen to him [i.e., Mr. Emberg]." (*Id.* ¶ 44–45) (quotation marks omitted).

---

[2] The complaint's language in this paragraph does not clearly allege Mr. Foster called her a "bitch" (*see* doc. 19 ¶ 36) (quotation marks omitted) but other paragraphs in the complaint support the inference (*see id.* ¶ 51).

After the arrests, Mr. Emberg told the Fosters' neighbors that they were arrested. (Doc. 19 ¶ 55). Mr. Emberg also told his fellow deputies and Mr. Foster's coworkers and bosses at the probation office. (*Id*. ¶¶ 54–56, 75). Mr. Emberg told Mr. Foster's coworkers and bosses about the arrest because Mr. Emberg, who had applied to be a probation officer, hoped that Mr. Foster would lose his job as a probation officer and Mr. Emberg would have a greater chance of being hired. (*Id*. ¶¶ 11, 53–54).

A few days later, Mr. Emberg filed criminal charges against the Fosters for "domestic violence-harassment." (*Id.* ¶ 49). The district attorney and the Fosters jointly moved to dismiss the state court case, which the court granted. (Doc. 19 ¶ 57). Mr. Emberg told the district attorney's office that he was displeased that the district attorney agreed to move to dismiss the charges. (*Id.* ¶ 58). The district attorney's office agreed and moved the court to set aside the dismissal order so the court could hear testimony from Mr. Emberg. (*Id.* ¶ 59). After hearing testimony, the court dismissed the cases against the Fosters. (*Id.* ¶ 60).

## II.    DISCUSSION

### 1.  Count Two: First Amendment Retaliation

In Count Two, the Fosters allege that after exercising their First Amendment rights, Mr. Emberg arrested and defamed them in retaliation for their speech. (*Id.* ¶ 72). Although styled as a claim for First Amendment retaliation, Count Two also

alleges that Mr. Emberg's actions "were malicious and in deliberate indifference" of their First and Fourteenth Amendments rights in violation of 42 U.S.C. § 1983. (*Id.* ¶ 76). Except for Mr. Foster's claim of retaliatory arrest, Mr. Emberg asserts he is entitled to qualified immunity from all claims contained in Count Two. (Doc. 32 at 18, 26–28 & n.1).

The court will address qualified immunity first, followed by the deliberate indifference claim, and finally the First Amendment retaliation claim.

"Qualified immunity shields a government official from liability unless he violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019) (quotation marks omitted). A defendant asserting qualified immunity as a defense must first show "that he was engaged in a discretionary function when he performed the acts of which the plaintiff complains." *Epps v. Watson*, 492 F.3d 1240, 1242 (11th Cir. 2007) (quotation marks omitted). The burden then shifts to the plaintiff to show the defendant "violated a statutory or constitutional right, and . . . that the right was clearly established at the time of the challenged conduct." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (cleaned up).

### a. *Qualified Immunity*

Except for Mr. Foster's retaliatory arrest claim, Mr. Emberg moves to dismiss the remainder of Count Two on the ground that he is qualifiedly immune from suit

under 42 U.S.C. § 1983.[3] (Doc. 32 at 18; *see id.* at 26 & n.1). But to do so, he must first show that "his discretionary authority extended to his alleged actions." *Estate of Cummings v. Davenport*, 906 F.3d 934, 939 (11th Cir. 2018). A defendant makes that showing by proving those actions "were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Id.* at 940 (quotation marks omitted). But "a bald assertion by the defendant that the complained-of actions were . . . within the scope of his discretionary authority is insufficient." *Id.* (quotation marks omitted).

Mr. Emberg argues he was engaged in his discretionary authority because "[t]he incident upon which [the Fosters] base their claims . . . arises from

---

[3] In their opposition brief, the Fosters argue that Mr. Emberg was "motivated" to arrest them "to further his own self-interests" (*i.e.*, obtaining Mr. Foster's job and "spark[ing] a romantic relationship with [Ms.] Foster"). (Doc. 43 at 9). In his reply brief, Mr. Emberg argues that the Fosters' argument is a judicial admission that Mr. Emberg was acting "in the ambit of [his] personal pursuits" that forecloses their argument that he was acting under color of law. (Doc. 46 at 2) (quotation marks omitted). Although the complaint does not include the express allegation that Mr. Emberg was trying to spark a romantic relationship with Ms. Foster, the other allegations that Mr. Emberg was motivated by personal interest are in the complaint. (*See* doc. 19 ¶¶ 45, 53–56).

And Mr. Emberg did not move to dismiss on the ground that Mr. Emberg was not acting under color of state law; he has raised that argument only in his reply brief. (*See* doc. 32 at 17–19; doc. 46 at 1–2). So the court does not consider the argument. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682–83 (11th Cir. 2014).

And even if he properly raised the argument, the standard is not as narrow as Mr. Emberg represents it to be. *See Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012) ("The dispositive question is whether the defendant was exercising the power she possessed based on state authority or was acting only as a private individual."). The court is therefore unpersuaded that the Fosters foreclosed their under-color-of-state-law argument. (*See* doc. 46 at 2).

[Mr.] Emberg's duty as a deputy sheriff to investigate crimes." (Doc. 32 at 18). He has met his burden for Ms. Foster's First Amendment retaliatory arrest claim; responding to a 911 call about a domestic dispute and arresting the involved parties is an action undertaken pursuant to his job duties as a deputy sheriff and within the scope of his authority. *Davenport*, 906 F.3d at 940.

But that argument cannot meet his burden for the Fosters' First Amendment retaliatory defamation claims. Mr. Emberg makes no argument and cites no authority for the proposition that telling the Fosters' neighbors and coworkers that they were arrested is related to the performance of his duties to investigate crimes. *See Davenport*, 906 F.3d at 940; *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1354 & n.4 (11th Cir. 2022) (finding that plaintiff forfeited any argument that the defendant violated clearly established law because she "dedicate[d] just two sentences to this all-important issue," and those two sentences failed to make any substantive argument and cited no authority). Mr. Emberg's brief would otherwise leave this court to make that argument on his behalf. *See Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011). The court cannot do so. *See id.* Accordingly, Mr. Emberg waived his argument that he is entitled to qualified immunity on the Fosters' First Amendment retaliatory defamation claim at this stage of the litigation. The court's qualified immunity analysis therefore proceeds only as to Ms. Foster's First Amendment retaliatory arrest claim.

Because Mr. Emberg has shown that he was acting in his discretionary authority when he arrested Ms. Foster, the burden shifts to Ms. Foster to demonstrate Mr. Emberg violated a statutory or constitutional right when he arrested her and that the right was clearly established at the time of the challenged conduct. *Echols*, 913 F.3d at 1319. The court will address whether the right was clearly established before it addresses the merits of the underlying constitutional claim. *See District of Columbia v. Wesby*, 583 U.S. 48, 62 n.7 (2018).

A plaintiff can show a right was clearly established in one of three ways: first, she "can show that a materially similar case" with "binding precedent tied to particularized facts" has already been decided; second, she can "show that a broader, clearly established principle should control the novel facts of a particular case"; and third, she can "show that the case fits within the exception of conduct which so obviously violates the Constitution that prior case law is unnecessary." *Waldron v. Spicher*, 954 F.3d 1297, 1304–05 (11th Cir. 2020) (alterations accepted; quotation marks omitted).

Ms. Foster appears to take the second route: she argues "the *contours* of [her] rights were sufficiently clear such that a reasonable official" would have known he was violating her rights. (Doc. 43 at 17). To allege a claim for First Amendment retaliation, a plaintiff must show (1) she engaged in constitutionally protected speech, (2) the defendant's retaliatory conduct affected that speech, and (3) a causal

10

connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019). And to state a First Amendment retaliation claim based on a retaliatory arrest, the plaintiff must show the arresting officer lacked probable cause. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1724–25 (2019). Having done so, "the plaintiff must show that the retaliation was a substantial or motivating factor behind the arrest, and, if that showing is made, the defendant can prevail only by showing that the arrest would have been initiated without respect to retaliation." *Id.* (alterations accepted; quotation marks omitted).

Ms. Foster alleges she engaged in constitutionally protected speech when *her spouse* told Mr. Emberg that she *planned* to make a complaint about him: specifically, the complaint alleges Mr. Foster told Mr. Emberg that Ms. Foster intended to make a complaint about him and "immediately upon learning of [Ms.] Foster's plans to . . . make a report about him to his superior officer, [Mr.] Emberg retaliated against her" by placing her under arrest. (Doc. 19 ¶ 71). Without deciding whether her theory of constitutionally protected speech is viable, the court finds she has failed to show that the right was clearly established. (*See* doc. 43 at 17–19); *Wesby*, 583 U.S. at 62 n.7.

Ms. Foster cites no authority to support her argument that it was clearly established that an individual engages in constitutionally protected speech when a

third party informs a police officer that the individual plans to file a complaint against them. (Doc. 43 at 17–19). Nor could the court locate any such authority.

Although the complaint also alleges Ms. Foster called Mr. Emberg's supervisor to complain about him (*see* doc. 19 ¶ 25), there is no allegation that Mr. Emberg knew about Ms. Foster's call before the arrest. The First Amendment retaliatory arrest claim is based on the sole allegation that Mr. Emberg arrested Ms. Foster when he heard from her husband that she planned to complain about him. (*See id.*). Ms. Foster has not shown that it was clearly established that she was engaged in constitutionally protected speech when her husband told Mr. Emberg she planned to make a complaint about him. As such, she has not shown Mr. Emberg violated a clearly established right.

Accordingly, because the court finds Mr. Emberg is entitled to qualified immunity on Ms. Foster's First Amendment retaliatory arrest claim, the court **WILL GRANT** the motion to dismiss that claim.

### b. *Merits – Deliberate Indifference Claim*

Although Count Two is captioned as a First Amendment Retaliation claim, the Fosters also allege in one paragraph that Mr. Emberg acted "in deliberate indifference of [their] 1st and 14th Amendment Constitutional Rights as secured by 42 USC § 1983." (Doc. 19 ¶ 76; *see also id.* ¶ 8). Mr. Emberg construes that language as a separate due process claim and moves for it to be dismissed because it fails to

state a claim. (*See* doc. 32 at 25–26). The Fosters do not respond to the argument in their response brief (*see* doc. 43) so they have waived the issue. *See Jackson v. West*, 787 F.3d 1345, 1358 n.7 (11th Cir. 2015). And in any event, the court does not construe that language as pleading a separate due process claim.

Accordingly, the court **WILL DENY** the motion to dismiss the deliberate indifference claim **AS MOOT** because the court does not construe the complaint as asserting such a claim.

### c. Merits –First Amendment Retaliation Claims (Defamation)

In Count Two, Mr. and Ms. Foster also allege that after Mr. Emberg learned that Ms. Foster planned to file a complaint about him, he retaliated against them by making defamatory statements about them. (*See* doc. 19 ¶¶ 70–76). Mr. Emberg moves to dismiss each Fosters First Amendment retaliatory defamation claim. The court will address each Fosters claim in turn.

### i. Ms. Foster – Defamation

To establish a prima facie case of defamation, a plaintiff must show: "[1] that the defendant was at least negligent [2] in publishing [3] a *false* and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)." *Ex parte Bole*, 103 So. 3d 40, 51 (Ala. 2012) (quotation marks omitted; alterations accepted). "Truth is

a complete and absolute defense to defamation." *Id.* (quotation marks omitted). Defamation is retaliatory if it "would deter a person of ordinary firmness in the plaintiff's position from continuing to engage in protected speech." *Echols v. Lawton*, 913 F.3d 1313, 1323 (11th Cir. 2019) (alterations accepted; quotation marks omitted).

As it relates to Ms. Foster, the complaint alleges that Mr. Emberg told the Fosters' neighbors they had been arrested. (*See* doc. 19 ¶¶ 55, 74). That statement is true and Ms. Foster cannot state a claim for defamation on those allegations. *See Ex parte Bole*, 103 So. 3d at 51; (doc. 19 ¶ 41).

Accordingly, the court **WILL GRANT** Mr. Emberg's motion to dismiss Ms. Foster's First Amendment retaliatory defamation claim.

### ii.  Mr. Foster – Defamation

The complaint alleges that Mr. Emberg defamed Mr. Foster in retaliation for exercising his First Amendment rights by informing his co-workers, bosses, and neighbors of his arrest. (Doc. 19 ¶ 75). Those statements are true and Mr. Foster cannot state a claim for defamation on those allegations. *See Ex parte Bole*, 103 So. 3d at 51; (doc. 19 ¶¶ 41, 43).

The complaint, however, does allege a statement that was not true: Mr. Emberg told Mr. Foster's co-workers that Mr. Foster was fired because of the arrest. (Doc. 19 ¶ 55). In his motion to dismiss, Mr. Emberg argues only that the

14

allegation is "conclusory [and] unsupported by any factual detail." (Doc. 32 at 26). But the allegation is not conclusory because it does not assert a conclusion; it is a factual allegation that Mr. Emberg told other people false information about Mr. Foster. Accepting that allegation as true and construing it in the light most favorable to Mr. Foster, the court finds Mr. Foster has sufficiently pleaded that the statement is defamatory. *See Ex parte Bole*, 103 So. 3d at 51; *see also Gates*, 884 F.3d at 1296.

Accordingly, the court **WILL DENY** Mr. Emberg's motion to dismiss Mr. Foster's First Amendment defamation claim.

### 2.  State-Law Claims

The Fosters sued Mr. Emberg in his individual capacity for engaging in malicious prosecution (Count Three) and Mr. Foster sued Mr. Emberg for engaging in abuse of process (Count Four). (Doc. 19 ¶ 7; *see also id.* ¶¶ 79–92). Mr. Emberg contends that because he was acting pursuant to his duties as a deputy sheriff, he is entitled to state immunity under Article 1, § 14 of the Alabama Constitution. (Doc. 32 at 28–29). The court will first address the state immunity argument followed by the merits of each state-law claim.

#### a.  State Immunity

Under Alabama law, state immunity generally does not apply to an individual-capacity claim unless the substance of the claim makes it clear that the State is the

true adverse party. *Ex parte Pinkard*, 373 So. 3d 192, 199 (Ala. 2022). That is true where the plaintiff's recovery in the suit "would directly affect a contract or property right of the State" or "would result in the plaintiff's recovery of money from the State." *Ex parte Cooper*, --- So. 3d ---, 2023 WL 5492465, at *4 (Ala. Aug. 25, 2023) (quotation marks omitted); *see Ex parte Pinkard*, 373 So. 3d at 199.

The Fosters seek money damages from Mr. Emberg in his individual capacity and ask nothing of the State itself. (Doc. 19 ¶ 7). Nor does Mr. Emberg argue that if the Fosters prevailed in this case, their recovery would affect a contract or property right of the State[4] or that the judgment would come from the State's treasury. (*See* doc. 32 at 28–32). Accordingly, Mr. Emberg is not entitled to state immunity.

### b. Count Three: Malicious Prosecution

To establish a claim of malicious prosecution under Alabama law, a plaintiff must prove that the defendant (1) "instigated without probable cause and with malice," (2) "a prior judicial proceeding against" the plaintiff, (3) "that the prior proceeding ended in favor of" plaintiff, and (4) that the plaintiff "suffered damages." *Willis v. Parker*, 814 So. 2d 857, 863 (Ala. 2001) (quotation marks omitted). A

---

[4] In his reply brief, Mr. Emberg "asserts that a verdict against him would implicate a contract or property right of the State." (Doc. 46 at 11–12). Not only was that argument raised for the first time in his reply brief, but it is also conclusory; Mr. Emberg makes no further argument as to how a verdict against him implicates a contract or property right of the State. (*See id.*). Accordingly, Mr. Emberg has not sufficiently shown a verdict against him would implicate a contract or property right of the State. *Sapuppo*, 739 F.3d at 682–83

proceeding does not end in favor of the plaintiff if "dismissal of the criminal charge was a component element of a settlement or compromise agreement between the parties." *Chatman v. Pizitz, Inc.*, 429 So. 2d 969, 971 (Ala. 1983).

Mr. Emberg moves to dismiss only on the ground that the proceedings did not end in favor of the Fosters because it was dismissed pursuant to a compromise agreement. (Doc. 32 at 33–37). To address that argument, the court must briefly describe the procedural history of the criminal case.

After the Walker County district attorney brought criminal charges for domestic violence individually against Mr. and Ms. Foster, the Fosters each filed joint motions to dismiss with the district attorney agreeing that their case should be dismissed.[5] (*See id.* at 42, 45). The judge granted the joint motions and dismissed the cases. (*Id.* at 48, 50). But shortly after the judge dismissed the cases, the district attorney filed motions to set aside the dismissal orders. (*Id.* at 52, 54). The district attorney represented that the joint motions to dismiss did not reflect the States' position and that the State believed the judge had to hold a hearing on the motion to dismiss. (*See* doc. 32 at 52, 54).

---

[5] The court may consider evidence outside the complaint if the evidence is central to the plaintiff's claim and its authenticity is not challenged. *Edwards v. Dothan City Schs.*, 82 F.4th 1306, 1311 (11th Cir. 2023). If the defendant attached the document to its motion to dismiss, the plaintiff must also mention the document in the complaint. *Id.* Here, Mr. Emberg attached pleadings from the criminal case to his motion to dismiss, which are central to the case, mentioned in the complaint, and not challenged on authenticity grounds. (*See* doc. 19 ¶¶ 57–60); *Edwards*, 82 F.4th at 1311.

The court later held a hearing, heard testimony from the parties, and entered an amended order dismissing the case. (*Id.* at 56–57, 59–60). The amended order noted that the court considered various factors, including that neither Foster filed formal charges against the other, neither party sustained injuries, and that the parties continue to live together with no intent to separate. (*Id.*).

Mr. Emberg contends it is "plainly evident" there was an agreement to dismiss the case and identifies two such "agreements." (*See id.* at 34–37). First, he suggests the joint motion to dismiss is evidence of such an agreement. (*See* doc. 32 at 34, 36). But that agreement fell apart after the motion to dismiss was granted: the district attorney moved the court to set aside its order dismissing the case, which the court did. (*Id.* at 52, 54; *see id.* at 56–57, 59–60).

Second, he contends that because the Fosters represented to the court that they were continuing to live together, they agreed to terminate each other's case. (*Id.* at 36). Without addressing the merits of such a theory of agreement (for which Mr. Emberg cites no authority), it is inapposite. (*See* doc. 32 at 36). The judge considered additional factors in dismissing the cases, such as neither party sustaining injuries. (*Id.* at 56–57, 59–60). And in any event, whether there was a compromise is a triable issue of fact to be resolved by the factfinder. *Chatman*, 429 So. 2d at 972. Viewing the evidence in the light most favorable to the Fosters, they have plausibly pleaded a claim for relief. *Butler*, 685 F.2d at 1265.

Accordingly, the court **WILL DENY** Mr. Emberg's motion to dismiss Count Three. (Doc. 32 at 32–37).

### c. Count Four: Abuse of Process

Mr. Foster alleges a claim for abuse of process because (1) "[Mr.] Emberg had an ulterior motive *in obtaining* the warrant"; (2) Mr. Emberg "hoped that by getting a warrant that [Mr.] Foster would get fired and [Mr. Emberg] would have a better chance of getting hired"; (3) "[Mr.] Emberg wrongfully used the arrest warrant by informing [Mr.] Foster's co-workers and bosses of the fallacious charges to have [Mr.] Foster fired so [Mr.] Emberg would stand a better chance of taking his job." (Doc. 19 ¶¶ 89, 91).

An abuse of process claim has three elements: (1) "the existence of an ulterior purpose," (2) "a wrongful use of process," and (3) "malice." *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998). The tort of abuse of process is limited to "the wrongful *use* of process *after it has been issued*." *Id.* "The defendant cannot be liable for an abuse of process claim unless he somehow acted outside the boundaries of legitimate procedure *after the charge had been filed*." *Willis v. Parker*, 814 So. 2d 857, 865 (Ala. 2001) (cleaned up). "There is no liability where the defendant has done nothing other than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* (cleaned up).

None of those allegations can support an abuse of process claim. The first

allegation focuses only on the wrongful *issuance* of a warrant. *Willis*, 814 So. 2d at 865. The second allegation focuses only on Mr. Emberg's bad intent in obtaining the warrant. *See Willis*, 814 So. 2d at 865 ("There is no liability where the defendant has done nothing other than carry out the process to its authorized conclusion, even though with bad intentions.") (cleaned up). And the third allegation focuses only on reputational harm collateral to the proceeding; it makes no reference to Mr. Emberg's abuse *of the criminal proceeding. See Willis*, 814 So. 2d at 865; *see also Haynes v. Coleman*, 30 So. 3d 420, 426 (Ala. Civ. App. 2009) (holding that a defendant could not be liable in an abuse of process claim where it was alleged the defendant initiated a proceeding to cause professional or personal reputational harm but there was no allegation the defendant abused the process after it was initiated).

There is one factual allegation in the general factual background of the complaint that is a closer call. The complaint alleges that after Mr. Emberg expressed his disapproval to the district attorney that he was dismissing the charges, the district attorney agreed, withdrew its motion, and requested a hearing to allow the court to hear testimony from Mr. Emberg, the arresting officer. (Doc. 19 ¶¶ 57–60). The court conducted the hearing and dismissed the charges. (*Id.* ¶ 60). Although that factual allegation focuses on conduct affecting the criminal process after it was initiated, there is no allegation that Mr. Emberg's conduct was "outside the boundaries of legitimate procedure." *Willis*, 814 So. 2d at 865 (quotation marks

omitted).

Accordingly, the court **WILL GRANT** Mr. Emberg's motion to dismiss the abuse of process claim. (Doc. 37–39).

### III.   CONCLUSION

The court **WILL GRANT IN PART** and **DENY IN PART** Mr. Emberg's motion to dismiss. The court **WILL DENY** Mr. Emberg's motion to dismiss Mr. Foster's First Amendment retaliatory defamation claim. The court **WILL DENY** the motion to dismiss the deliberate indifference claim **AS MOOT** because the court does not construe the complaint as asserting such a claim. The court **WILL DENY** Mr. Emberg's motion to dismiss the malicious prosecution claims.

The court **WILL GRANT** Mr. Emberg's motion to dismiss Ms. Foster's First Amendment retaliatory arrest and defamation claims and **WILL DISMISS** those claims **WITH PREJUDICE**. And the court **WILL GRANT** Mr. Emberg's motion to dismiss the abuse of process claim and **WILL DISMISS** that claim **WITH PREJUDICE**.

This case will proceed as to the following claims for each Foster:

<u>Ms. Foster</u>

|  |  |
|---|---|
| **Count One:** | Unlawful seizure of a person in violation of the Fourth Amendment |
| **Count Three:** | Malicious prosecution |

<u>Mr. Foster</u>

| | |
|---|---|
| **Count One:** | Unlawful seizure of a person in violation of the Fourth Amendment |
| **Count Two:** | First amendment retaliation (retaliatory arrest and defamation) |
| **Count Three:** | Malicious prosecution |

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this May 24, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE